statute, for the purpose of constructing a system of water works. In fact and law, the village treasurer has no control over it; he is not even the custodian; he cannot pay or disburse it. Reviewing all of the codified and statutory law on the subject of the award of costs, we are of the opinion that the makers never intended that the treasurer of a municipal corporation should be the chief fiscal officer to which claims must be presented, in which he is in no way interested as a custodian or disbursing officer. The legislature intended that the treasurer was the chief fiscal officer as to those moneys which, by virtue of his office, he received, keeps, and disburses, and to those only. "The presentation of the claims in this action to the board of water commissioners and its treasurer was a full compliance with section 3245." Its treasurer was the chief fiscal officer. It follows that the plaintiffs are entitled in this action to the costs of the action, to be taxed, and an extra allowance of 5 per cent. on the recovery. We are of the opinion, independent of section 3245, that the plaintiffs are entitled to costs. Section 18, c. 181, Laws 1875, as amended by chapter 527, Laws 1890, provides:

"The board of water commissioners of any village may sue, complain or defend in any court, in the name of said village, in any action to enforce any contract with said board, or to enforce any claim for damages, water rents, labor, or supplies connected with the building or carrying on of the water-works by said board."

The complaint or answer of said village in such actions shall be verified by the oath of some member of the board. The complaint in actions against said village in such cases shall be served on the board of water commissioners, whose duty it shall be to defend in the name of the village. The damages and costs recovered by the village in such actions shall be paid to the treasurer of the board of water commissioners for their use. The damages and costs against the village in such actions may be paid by the treasurer of said board from any funds in his hands not otherwise appropriated.

The motion for an extra allowance is granted.

Motion granted.

---

(36 App. Div. 535.)

PURDY v. PURDY.

(Supreme Court, Appellate Division, Second Department. January 10, 1899.)

WILLS—CHARGE OF LEGACIES ON REALTY.
　　A will read: "All the rest of my property, after paying all the legacies and my lawful debts, I give, together with my farm, to my son J." The farm was the only realty the testator had, and, if the executor had collected the outstanding debts as directed in the will, the personalty would have sufficed to pay the legacies. *Held*, that the legacies were not a charge on the farm.

Appeal from special term, Westchester county.

Action by Theodore Purdy against J. Irving Purdy, individually, and as one of the executors, etc., of Jacob G. Purdy, deceased, impleaded, etc. There was a judgment for defendant, and plaintiff appeals. Affirmed.

The following is the opinion of the court below (DYKMAN, J.):

"This suit is brought for the purpose of securing a judgment which shall charge the farm of the defendant, J. Irving Purdy, with the payment of certain legacies bequeathed to the legatees by the last will and testament of Jacob G. Purdy, deceased, and the result of the suit is dependent upon the construction of that instrument. The will is short. It first bequeaths 11 legacies to the children and grandchildren of the testator, amounting in the aggregate to $4.311, and then proceeds as follows: 'All the rest of my property, after paying all the legacies and my lawful debts and funeral expenses, I give, together with my farm, to my son Jacob Irving Purdy. My executors to serve without pay. I direct my executors, hereinafter named, to collect all my outstanding obligations, and pay the same, as directed by this my will; likewise, I make and appoint my son J. Irving Purdy and my son Theodore Purdy to be executors of this my last will and testament.' Then follows the attestation clause.

"While the word 'property,' in its general signification, is sufficiently comprehensive to include both real and personal property, it applies in this will to personal property especially. The language is: 'All the rest of my property, after paying all the legacies and my farm, to my son. * * *' The farm was the only real property the testator owned, and that was annexed to the residue of the property left after the debts and legacies were paid. It is to be borne in mind that the farm was not mingled with the whole of the other property from which the debts and legacies were to be paid. It was united with the rest of that property which remained after such payments had been made, and, after annexation of such residue to the farm, the consolidated property was given to the son. It was part real, part personal. The farm was real, and passed in its integrity, and the rest was personal; and that residue was the remainder of the property, from which the debts and legacies were to be paid, after they had been paid from it. It follows logically and demonstratively that the personal property of the testator was charged with the payment of the legacies, and that the real property was not so charged. The farm was separated, and so designated by name as a distinct thing, to be given with the other property left after the payment from it of the debts and legacies. Then, again, the executors were directed to collect the outstanding obligations and pay the same as directed by the will. Although that sentence which contains the direction is obscure, yet the evident intention of the testator was to direct the executors to collect the obligations he held, and pay the creditors and legatees from the money so collected. There was no disposition of the personal property of the testator made by his will, except its devotion to the payment of debts and legacies, and the bequest of the residue, with the farm, to the son J. Irving Purdy, and therefore no deficiency of the personal property was created by the will. The insufficiency was occasioned in part, at least, by the failure to collect the outstanding obligations. In most of the cases where an intention to charge real estate with the payment of legacies was not expressed, and the inference of such intention has been drawn from the residuary clause of the will, there has been language employed which showed that the legacies were in the minds of the testators as being a subtraction from the real estate, which was to leave the rest and residue of it. 'The cases * * * in which legacies have been charged upon the real estate, on the strength of the residuary clause, are where the language of it was such * * * as that the court could well hold that there was a blending of the two kinds of property, the whole estate into one mass, and that a gift of the residue so blended imported an intention that the legacies were to be paid first thereout.' Bevan v. Cooper, 72 N. Y. 325. In this will the language of the residuary clause shows clearly that the legacies were to be subtracted from the personal property, and that such subtraction was to leave a rest and residue, which, together with the farm, was given to the son. The peculiar language employed by the testator indicates an anticipation of the residue of personal property after the payment of legacies; for, immediately after giving the legacies, he says: 'All the rest of my property, after paying all the legacies and my lawful debts and funeral expenses, I give, together with my farm, to my son.' The phrase, 'rest of my property,' refers to the personal property which the testator expected would remain after the debts and legacies were all paid from it. The

words, 'together with my farm,' are independent of the rest of the sentence, and the word, 'together' is employed to annex the farm to the residue of the personal property. This examination leads to the conclusion that the legacies are not a charge upon the land, and that determination does not convict the testator of the inconsistency of giving legacies without making provision for their payment. He had reason to believe that his personal property would be sufficient for that purpose. It does not appear that he owed any debts, and if the promissory note which he held against his son had been collected by his executors, as he directed, his personal property would have fallen but little short of paying the legacies. This conclusion is in accordance with the general rule that the personal property is the primary fund for the payment of legacies, and it is the only fund, unless an intention, expressed or implied, can be collected from the will in connection with the circumstances surrounding the testator at the time of the execution of the will. Unforeseen circumstances occurring subsequent to the execution of the will may not avail to show a different intention. Bevan v. Cooper, supra; Morris v. Sickly, 133 N. Y. 456, 31 N. E. 332. Judgment must be entered in favor of the defendants dismissing the plaintiff's complaint, with costs to the defendant J. Irving Purdy. No allowance. Let findings be prepared in accordance with this opinion."

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

A. J. Adams, for appellant.
A. S. Tompkins, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of DYKMAN, J., at special term.

---

(39 App. Div. 133.)

### HUTCHINSON v. CHARLES F. PARKER & CO.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK.
     A laborer employed in leveling the bottom of a canal after it has been blasted, who knows that charges used in the blasting are often left unexploded, assumes the risk of injury from an explosion of such a charge.

2. SAME—FELLOW SERVANT.
     A laborer employed in leveling the bottom of a canal after it has been blasted cannot recover for injuries resulting from the negligence of a fellow laborer in striking with his pick a charge which had been left unexploded.

     Follett, J., dissenting.

Action by Richard F. Hutchinson against Charles F. Parker & Co. At a trial term, at the close of the evidence, on motion of the defendant, a verdict was directed of "no cause of action" for the defendant, to which the plaintiff took an exception; and plaintiff formulated numerous questions on which he asked to go to the jury. The requests were denied, and the plaintiff took an exception. The trial court ordered the exceptions to be heard before this court in the first instance, and granted a stay of proceedings, and the plaintiff now comes and moves for a new trial. Exceptions overruled.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and Mc-LENNAN, JJ.

D. E. Brong, for the motion.
A. K. Potter, opposed.